UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEELON D. FRANCISCO, CDCR #G-25322,<br><br>                        Plaintiff,<br><br>vs.<br><br>DOCTOR AMIR MOHAMAD,<br><br>                        Defendant. | Case No.: 21cv1013-GPC (AGS)<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO PROCEED IN FORMA PAUPERIS AND FOR APPOINTMENT OF COUNSEL, and**<br><br>**(2) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

       Plaintiff Keelon D. Francisco, incarcerated at the R. J. Donovan Detention Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claims Defendant RJD treating physician Dr. Mohamad was negligent, committed medical malpractice, and was deliberately indifferent to his serious medical needs when he declined to order an MRI to evaluate nerve damage in Plaintiff's right arm. (*Id.* at 3-6.)

       This case was initially dismissed due to Plaintiff's failure to prepay the civil filing fee or file an application to proceed in forma pauperis. (ECF No. 3.) On July 1, 2021,

Plaintiff paid the civil filing fee.  (ECF No. 5.)  On September 9, 2021, Plaintiff filed a Motion to proceed in forma pauperis for the purpose of being appointed counsel.  (ECF No. 6.)

**II.    Screening pursuant to 28 U.S.C. § 1915A(b)**

**A.    Standard of Review**

Because Plaintiff is a prisoner his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915A(b), which requires the Court to *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from such relief. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915A(b) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and

(2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.  Plaintiff's Allegations

Plaintiff alleges that on February 20, 2020, he submitted a Health Care Services Request form 7362 seeking medical attention regarding ongoing pain in his upper back and neck "after playing handball pretty hard." (ECF No. 1 at 3, 27.) He was evaluated on February 23, 2020, "by the Triage Registered Nurse who prescribed pain medication that turned out not to be a remedy for my situation." (*Id.* at 3.) He submitted another 7362-form seeking medical attention on May 21, 2020, asking for a refill of the pain medication and to be seen by a doctor for a second opinion regarding the cause of his pain. (*Id.*) He was provided with more pain medication but was not seen by a doctor. (*Id.*)

On June 13, 2020, Plaintiff submitted a 7362-form stating he was experiencing loss of feeling in his right arm, hand and fingertips, and was evaluated with the assistance of X-rays. (*Id.*) On August 4, 2020, he submitted another 7362-form indicating that he had been X-rayed twice without identifying the problem, was therefore sure it was not a bone issue, and requested an MRI. (*Id.*)

Plaintiff states that he was seen by RJD Physical Therapist Colin Bowles on October 1, 2020, who noted atrophy and decreased muscle tone in the upper right arm and pectoral muscle compared to the left arm. (*Id.* at 3-4.) Bowles found that Plaintiff "has obvious nerve root compression injury from months back" causing atrophy and pronounced muscle weakness, recommended "further imaging to determine status of nerve compromise" and discontinuation of physical therapy until a determination is made with respect to the "cause of compression and plan for resolution," and sent the report to Dr. Mohamad. (*Id.* at 4.)

Plaintiff was seen by Dr. Mohamad, the only Defendant in this action, on October 5, 2020, who found: "At this time [I] do not feel 'MRI' is necessary given that patient has intact strength." (*Id.*) Plaintiff claims "it is obvious that Dr. [Mohamad] is going against the diagnosis given by" the physical therapist, giving "birth to the foundation of" his claims for negligence, medical malpractice and deliberate indifference to his medical needs. (*Id.*

at 4-5.) He contends this is an open and shut case because Dr. Mohamad negated the diagnosis of the physical therapist. (*Id*. at 4.)

Plaintiff further alleges that on November 6, 2020, he "sustained a head injury due to lack of shoulder strength." (*Id*. at 5.) He received an MRI on January 26, 2021, which resulted in a referral to a neurologist on February 11, 2021. (*Id*.) An electromyography was performed on April 19, 2021, leading to the finding of "evidence for mild focal neuropathy of the left ulnar nerve elbow. There are no findings to support median entrapment neuropathies or cervical radiculopathy of upper limbs." (*Id*. at 6.) Plaintiff claims the delay caused by Defendant Dr. Mohamad's refusal to order an MRI has "harmed me further to the point I may never be the same." (*Id*.)

### C.  Analysis

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*., quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). A "serious medical need" includes "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently

culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03.  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Complaint alleges that: (1) when Plaintiff complained of upper back and neck pain he was provided pain medication, (2) three months later he requested reevaluation and received more pain medication; (3) three weeks after that he complained of severe pain, he experienced loss of feeling in his right arm, hand and fingertips, and was X-rayed twice, (4) eight months after he first sought medical attention he was examined by a physical therapist who concluded "[h]e needs further imaging of neck to determine cause of compression and consult with specialist to determine status of nerve compromise," (5) that recommendation was forwarded to Defendant Dr. Mohamad who examined Plaintiff four days later and, based on a finding that Plaintiff had intact strength in his arm, determined that an MRI was unnecessary, (6) three months later, after Plaintiff sustained a head injury in a fall caused by weakness in his arm, he had an MRI which showed nerve damage in his arm, (7) but for the delay in having the MRI he would have had his nerve damage diagnosed earlier, and (8) he was in chronic pain for nearly a year, including during the delay in obtaining an MRI. (ECF No. 1 at 3-4.) Plaintiff has adequately alleged a serious medical condition. *See McGuckin*, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.")

However, there are no facts alleged in the Complaint which plausibly suggest Dr. Mohamad was aware, or should have been aware, that the failure to order an MRI presented a serious risk to Plaintiff's health and safety, as opposed to a disagreement over the appropriate course of medical care. *See Estelle*, 429 U.S. at 105-07 (inadvertent failure to

provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to (the prisoner's) health.") (internal quote marks omitted); *Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.").

Dr. Mohamad is alleged to have examined Plaintiff and determined that sufficient strength remained in his arm such that he made a medical judgment not to follow the recommendation of the physical therapist that further imaging in addition to the previous two X-rays was necessary to determine the extent of the injury and the proper course of treatment. Even if Plaintiff has state law claims for negligence or medical malpractice based on these allegations, they do not rise to the level of deliberate indifference of his serious medical need. *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and the proper forum is [in state court].")

Even if the Complaint is liberally construed as alleging Dr. Mohamad should have been aware of a need for an MRI based either on Plaintiff's medical records, the findings and recommendations of the physical therapist, or through his physical examination of Plaintiff, there are no allegations which plausibly demonstrate that Dr. Mohamad actually drew an inference that not ordering an MRI created a serious risk to Plaintiff's health and safety. "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Farmer*, 511 U.S. at 837; *see also Toguchi*, 391 F.3d at 1060 (Under [the deliberate indifference] standard,

the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"), quoting *Farmer*, 511 U.S. at 837. In order to cure this pleading defect, Plaintiff must set forth factual allegations which plausibly suggest "that the course of treatment the doctor[] chose was medically unacceptable under the circumstances and that the defendant[] chose this course in conscious disregard of an excessive risk to plaintiff's health." *Colwell*, 763 F.3d at 1068; *Estelle*, 429 U.S. at 105-07 (an inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (a "mere lack of due care by a state official" is insufficient to state a constitutional claim for lack of medical care by a pretrial detainee); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 406-07 (9th Cir. 1985) ("[A] mere delay of surgery, without more, is insufficient to state a claim of deliberate indifference.") The Court recognizes the difficulty of meeting this pleading standard. *See Toguchi*, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard.") As currently pleaded, there are no factual allegations which, if proven true, would establish that Dr. Mohamad chose a medically unacceptable course of treatment and chose it in conscious disregard to an excessive risk to Plaintiff's health and safety.

In addition, when medical treatment is delayed rather than simply denied, the delay amounts to deliberate indifference only if it caused substantial harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990), citing *Shapley*, 766 F.2d at 407. There are no factual allegations in the Complaint which plausibly allege the three-month delay in receiving an MRI caused injury. Although Plaintiff alleges he had an MRI only after a fall caused by weak arm muscles and that too "much time elapsed without proper medical attention and it harmed me further to the point I may never be the same" (ECF No. 1 at 6), he does not allege *facts* from which a plausible inference can be drawn that the three-month delay in obtaining an MRI caused those alleged harms. Such "unadorned, the defendant-unlawfully-harmed me accusation[s]" falls short of meeting the pleading standard, as

"mere conclusory statements, do not suffice" to state a § 1983 claim. *Iqbal*, 556 U.S. at 678. If, for example, Plaintiff can allege that the course of treatment he received after his MRI was such that, if it had been followed as a result of the MRI Dr. Mohamad allegedly should have ordered, it would have prevented his fall or prevented further injury, he may be able to allege harm from the delay. Such allegations, in connection with factual allegations regarding what medical information Dr. Mohamad had when he examined Plaintiff, may potentially adequately allege that the need for an MRI was so obvious that Dr. Mohamad must have been aware Plaintiff had a serious medical need for an MRI and deliberately disregarded that need. *See e.g. Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *see also e.g. Jenkins v. Marcelo*, No. 19cv5537-VBF (JEM), 2020 WL 7094078 (C.D. Cal. Aug. 24, 2020) (unpublished) (finding plaintiff stated a claim for deliberate indifference to a serious medical need for treatment to his shoulder where defendant doctor knew of x-ray findings showing extreme degradation in cartilage and knew of reports of unremitting pain, loss of motion and failure to improve with physical therapy, but waited sixteen and a half months to order an MRI).

Accordingly, the Court *sua sponte* dismisses the Complaint based on a failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678. To the extent Plaintiff seeks to bring claims under state law for negligence or medical malpractice, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc*., 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims at this time.

/ / /

### D. Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim against the dismissed Defendant if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III. Motion to proceed in forma pauperis and for appointment of counsel

After paying the filing fee in full, Plaintiff filed a Motion to proceed in forma pauperis for the purpose of being appointed counsel. (ECF No. 6.) Because Plaintiff has paid the filing fee his request to proceed in forma pauperis is **DENIED** as moot.

Plaintiff requests appointment of counsel on the basis that his legal assistant was recently removed from RJD after contracting the Covid virus, and because access to the prison law library has been limited due to the pandemic. (*Id*. at 2.) All documents filed pro se are liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Such exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Plaintiff's Complaint demonstrates that while not formally trained in law, he is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are not exceptionally legally complex. *Agyeman*, 390 F.3d at 1103. In addition, for the reasons

discussed above, Plaintiff has yet to show he is likely to succeed on the merits of the claims. Accordingly, the Court **DENIES** Plaintiff's motion for appointment of counsel without prejudice.

## IV. Conclusion and Order

Good cause appearing, the Court:

1. **DENIES** Plaintiff's Motion to proceed in forma pauperis and for appointment of counsel. (ECF No. 6.)

2. **DISMISSES** the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915A(b).

3. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 21cv1013-GPC (AGS) in its caption and must be complete by itself without reference to his original Complaint. Any Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

4. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use in amending should he choose to do so.

**IT IS SO ORDERED.**

Dated: September 16, 2021

Hon. Gonzalo P. Curiel
United States District Judge