UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEELON D. FRANCISCO, CDCR #G-25322,<br><br>         Plaintiff,<br><br>vs.<br><br>DOCTOR AMIR MOHAMAD, et al.,<br><br>         Defendants. | Case No.: 21cv1013-GPC (AGS)<br><br>**ORDER SCREENING FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915A(b)** |

On May 27, 2021, Plaintiff Keelon D. Francisco, a state prisoner incarcerated at the R. J. Donovan Detention Facility ("RJD") in San Diego, California, proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claimed RJD physician Defendant Dr. Mohamad was negligent, committed malpractice, and was deliberately indifferent to his serious medical needs when he declined to timely order an MRI to evaluate nerve damage in Plaintiff's right arm. (*Id.* at 3-6.) The Complaint was accompanied by an application to proceed in forma pauperis. (ECF No. 3.) After the in forma pauperis motion was denied, Plaintiff paid the filing fee. (ECF Nos. 4-5.)

On September 16, 2021, the Court screened the Complaint pursuant to 28 U.S.C. § 1915A(b), which requires the Court to *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from

defendants who are immune. (ECF No. 7.) The Complaint was dismissed with leave to amend because it failed to contain sufficient facts to plausibly allege Dr. Mohamad was aware that the failure to order an MRI presented a serious risk to Plaintiff's health and safety and deliberately disregarded that risk as required to state an Eighth Amendment claim for deliberate indifference to a serious medical need. (*Id*. at 5-8.)

On December 2, 2021, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 10.) The FAC re-names Dr. Mohamad as a Defendant, and adds Defendants RJD Warden Pollard, RJD Chief Medical Officer Roberts, and John and Jane Does 1-100. (*Id*. at 2.) Plaintiff now claims that due to a policy at RJD of discouraging costly treatments and diagnostic techniques in order to reduce costs, as implemented by Dr. Mohamad and the Doe Defendants under the supervision of Defendants Pollard and Roberts, he was denied neurological testing and referral to a specialist as recommended by an RJD physical therapist. (*Id*. at 10-27.)

## II. Screening pursuant to 28 U.S.C. § 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915A(b), which requires the Court to *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from such relief. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915A(b) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quote marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.     Plaintiff's Allegations

Plaintiff alleges that on February 20, 2020, he submitted a Health Care Services Request 7362-form seeking medical attention regarding ongoing pain in his upper back and neck. (ECF No. 10 at 11.) He was seen by a triage nurse and prescribed Ibuprofen pain medication which "did not remedy [his] condition." (*Id.*) He submitted another 7362-form seeking medical attention on May 21, 2020, asking to see Defendant Dr. Mohamad, his assigned personal care physician, but was issued additional Ibuprofen and not given an appointment or seen by a doctor. (*Id.*)

Plaintiff submitted a third 7362-form stating he was experiencing loss of feeling in his right arm, hand and fingertips, and was evaluated with the assistance of X-rays but was provided no other treatment. (*Id.*) His "pain persisted at the severe level," so he submitted another 7362-form stating he was suffering extreme pain and requesting an MRI. (*Id.*) After a second X-ray did not identify the "reason for Plaintiff's severe condition," and after suffering extreme pain for six months, he "finally" received an MRI on August 4, 2020. (*Id.*) However: "Even after the M.R.I., there was no treatment provided specifically for the nerves in the form of neurology specific medical personnel." (*Id.*)

Plaintiff states that he was seen by RJD Physical Therapist Colin Bowles on October 1, 2020, who noted atrophy and decreased muscle tone in the upper right arm and pectoral muscle compared to the left arm. (*Id.*) Bowles found that Plaintiff "has obvious nerve root

compression injury from months back" causing atrophy and pronounced muscle weakness, recommended "further imaging of neck to determine cause of compression and consult with specialist to determine status of nerve compromise," ordered physical therapy to be discontinued until a determination was made with respect to the "cause of compression and plan for resolution," and sent a report to Dr. Mohamad. (*Id*. at 11-12.)

Plaintiff was seen by Dr. Mohamad several days later, on October 5, 2020, after eight months of presenting numerous requests for medical care while experiencing severe pain and numbing in the right shoulder, chest, arm, hand and fingers. (*Id*. at 12.) Plaintiff contends that Dr. Mohamad, after "a very cursory assessment," determined Plaintiff "did not need any further assessment," and neglected the severity of his condition and decided to refuse timely adequate medical care or spend funds on costly treatment as recommended by the physical therapist in order to qualify "for a 20% bonus of funds saved by his lack of treatment," thereby "pleasing the institution's 'Utilization Review System' called 'I.U.M.C.'" (*Id*. at 12-13.)

Plaintiff alleges that on November 6, 2020, his "strength in the right arm, shoulder and chest failed him as he leaned against the wall in his cell, like the muscles in those parts of his body just shut off. Plaintiff fell against the wall striking his forehead and occipital areas, causing loss of consciousness for a few minutes and swelling to the forehead and occipital areas," and was taken to the RJD medical clinic in an emergency vehicle. (*Id*.) He contends these new injuries are directly related to Dr. Mohamad's failure to treat his prior injury and should have alerted Dr. Mohamad to the need for further treatment and evaluation as recommended by the physical therapist. (*Id*. at 13-15.) Plaintiff claims that years-long attempts to reduce the budget of the California Department of Corrections and Rehabilitation ("CDCR"), including the 20% bonus to medical personnel for reducing costs, has resulted in a flawed and unconstitutional medical system within the CDCR, and that Dr. Mohamad knew if he ordered the necessary tests in Plaintiff's case it would have exposed those flaws in the system. (*Id*. at 15-19.)

///

Plaintiff alleges that after an RJD treating physician diagnoses medical conditions and submits a report to the I.U.M.C. for prescribed medical care, the I.U.M.C. makes the determination whether or not to approve the prescribed procedure or treatment and encourages medical providers not to diagnose any condition requiring expensive treatment. (*Id.* at 20.) He claims the "supervisory staff" at RJD, including Defendants Warden Pollard and Chief Medical Officer Roberts, are responsible for the actions of Dr. Mohamad and the John and Jane Doe members of the I.U.M.C. which led to his being provided only over-the-counter pain medication for his serious medical condition. (*Id.* at 21-23.)

Plaintiff claims an Eighth Amendment violation against Defendants Dr. Mohamad, Warden Pollard, Chief Medical Officer Roberts, and Does 1-100. (*Id.* at 23-27.) He seeks a declaratory judgment that his rights were violated, monetary damages, costs, fees and any relief deemed just and proper. (*Id.* at 27.)

**C.   Analysis**

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.*, quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). "[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain." *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently

culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.*, quoting *Wilson*, 501 U.S. at 302-03. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The FAC alleges that: (1) When Plaintiff first complained of upper back and neck pain he was seen by a nurse and provided pain medication, (2) three months later he requested reevaluation and asked to see Defendant Dr. Mohamad, his assigned personal care physician, but only received more pain medication; (3) several weeks after that he complained of severe pain, loss of feeling in his right arm, hand and fingertips, and was X-rayed twice, (4) six months after he first sought medical care he received an MRI, (5) two months later he was examined by a physical therapist who concluded "[h]e needs further imaging of neck to determine cause of compression and consult with specialist to determine status of nerve compromise," and who forwarded that recommendation to Dr. Mohamad, (6) Dr. Mohamad conducted a cursory examination of Plaintiff four days later and declined to order additional imaging or consultation with a specialist as recommended by the physical therapist, (7) one month later Plaintiff sustained a head injury in a fall caused by weakness in his arm, shoulder and chest, and (8) after being in chronic pain for nearly a year he has not had necessary additional neurological testing or consultation with a specialist to determine the extent of the nerve damage and what proper treatment is necessary due to money-saving policies followed by Defendant Dr. Mohamad under the supervision of Defendants Warden Pollard and Chief Medical Officer Roberts as implemented by the Doe Defendant members of the I.U.M.C. (ECF No. 10 at 10-27.) Plaintiff has adequately alleged a serious medical condition. *See Doty*, 37 F.3d at 546 n.3 ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

With respect to Defendant Dr. Mohamad, Plaintiff has sufficiently alleged that after the MRI showed nerve damage in his arm and the physical therapist reported to Dr. Mohamad that further imaging and consultation with a specialist was necessary to diagnose and treat Plaintiff's condition, Dr. Mohamad provided a cursory examination insufficient to adequately diagnose Plaintiff's condition or independently determine whether the recommended additional imaging or consultation with a specialist was necessary, which led to additional injuries, and made the inadequate diagnosis based on its cost rather than a reasoned medical judgment, in knowing disregard to Plaintiff's serious medical need for further imaging and specialist consultation because Dr. Mohamad had a personal financial incentive to deny expensive treatment. Such allegations are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. § 1915A(b) with respect to Defendant Dr. Mohamad. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to (the prisoner's) health.") (internal quote marks omitted); *Colwell,* 763 F.3d at 1066 ("Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'"), quoting *Estelle*, 429 U.S. at 104. However, Plaintiff is cautioned that the *sua sponte* screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

With respect to Defendants RJD Warden Pollard and RJD Chief Medical Officer Roberts, Plaintiff seeks to hold them liable as supervisors of Dr. Mohamad and the Doe Defendant members of the I.U.M.C. who are alleged to encourage RJD medical providers not to diagnose any condition which requires expensive treatment. Supervisory liability is not an independent cause of action under § 1983, and Plaintiff must allege both an underlying constitutional violation and a causal connection between the supervisor's

actions and the violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989). A defendant is liable when he or she "personally participated" in the alleged constitutional deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")

There are no factual allegations in the FAC which plausibly allege Defendants Pollard or Roberts were actually aware that the I.U.M.C.'s alleged policy of encouraging RJD medical providers not to diagnose any condition which requires expensive treatment resulted in a constitutional violation arising from Plaintiff's medical treatment. At most, the FAC alleges these Defendants should have been aware that the policy of incentivizing doctors to deny costly treatment by providing a 20% bonus could lead to such instances as Plaintiff has encountered. "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Farmer*, 511 U.S. at 837; *see also Toguchi*, 391 F.3d at 1057 ("Under [the Eighth Amendment's deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"), quoting *Farmer*, 511 U.S. at 837.

In order to cure this pleading defect, Plaintiff must set forth factual allegations which plausibly show the supervisory Defendants were aware that the course of treatment Dr. Mohamad chose was medically unacceptable under the circumstances and were aware that it was chosen "in conscious disregard of an excessive risk to plaintiff's health." *Colwell*,

763 F.3d at 1068. As drafted, the FAC merely alleges Defendants Pollard and Roberts were supervising a treating physician acting under RJD policies which by their nature could lead to the denial of necessary medical care, not that these Defendants were *actually aware* that those policies resulted in Dr. Mohamad denying Plaintiff necessary neurological diagnosis and specialist consultation in deliberate disregard to a substantial risk to Plaintiff's health. *See Estelle*, 429 U.S. at 105-07 (an inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (a "mere lack of due care by a state official" is insufficient to state a constitutional claim for lack of medical care). This is a high pleading standard. *See Toguchi*, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard.") As currently pleaded, there are no factual allegations in the FAC which, if proven true, would establish that Defendants Pollard and Roberts, in conscious disregard to an excessive risk to Plaintiff's health, were aware the cost-cutting policies at RJD resulted in him receiving a medically unacceptable course of treatment, and what actions they took, or were required to take but failed to take, which plausibly allege they were aware of and deliberately disregarded such a risk. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); *Starr*, 652 F.3d at 1208 ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.")

    The FAC contains the same pleading defect with respect to the Doe Defendants, who are alleged to be members of the I.U.M.C. who apply the policy which Plaintiff alleges encourages RJD medical providers not to diagnose any condition that requires expensive treatment. There are no factual allegations that plausibly suggest any of these Defendants were *actually aware* that the alleged cost-cutting policies they implemented at RJD resulted

in Dr. Mohamad choosing a medically unacceptable course of treatment in conscious disregard to an excessive risk to Plaintiff's health and safety. Even if Plaintiff can cure this pleading defect, without the name of these Defendants the Court cannot order the U.S. Marshals' Service to effect service, and a failure to properly name these defendants would result in their dismissal without prejudice. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[T]he use of 'John Doe' or 'Jane Doe' to identify a defendant is not favored," and a plaintiff need not be given an opportunity to identify them if they "would be dismissed on other grounds.")

Accordingly, the Court *sua sponte* dismisses all claims in the FAC against Defendants RJD Warden Pollard, RJD Chief Medical Officer Roberts, and John and Jane Does 1-100 without prejudice based on a failure to state a claim. *See* 28 U.S.C. § 1915A(b); *Wilhelm*, 680 F.3d at 1121; *Iqbal,* 556 U.S. at 678; *Farmer*, 511 U.S. at 837.

### D.  Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim against the dismissed Defendants if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### E.  Plaintiff's Options

Because the Court has determined that only Plaintiff's Eighth Amendment deliberate indifference to medical care claim against Defendant Dr. Mohamad survives the *sua sponte* screening process, it will give Plaintiff the opportunity to either: (1) notify the Court of his intent to proceed with that claim against that Defendant only; or (2) file a Second Amended Complaint that attempts to correct the deficiencies of pleading against any or all of the remaining Defendants identified in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff notifies the Court he wishes to proceed only with his claim against Defendant Dr. Mohamad, the Court will

issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Dr. Mohamad and dismiss all other claims.

## III. Conclusion and Order

Good cause appearing, the Court:

1. **DISMISSES** all claims against Defendants RJD Warden Pollard, RJD Chief Executive Officer Glynn, and John and Jane Does #1-100 pursuant to 28 U.S.C. § 1915A(b).

2. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of his intention to proceed with his claim against Defendant Dr. Mohamad only; or (2) file a Second Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's Second Amended Complaint must be clearly entitled "Second Amended Complaint," include Civil Case No. 21cv1013-GPC (AGS) in its caption and must be complete by itself without reference to any other versions of his Complaint. Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

3. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Amended Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use in amending should he choose to do so.

**IT IS SO ORDERED.**

Dated:  December 20, 2021

Hon. Gonzalo P. Curiel
United States District Judge