**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEELON D. FRANCISCO,<br>CDCR #G-25322,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>DR. AMIR MOHAMED,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:21-cv-01013-GPC-AGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST PURSUANT TO 42 U.S.C. § 1997e(a)**<br><br>**[ECF No. 22]** |

　　　On May 27, 2021, Plaintiff Keelon Francisco ("Plaintiff" or "Francisco"), currently incarcerated at California Rehabilitation Center and proceeding pro se, filed a civil action

pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1[1]. Plaintiff alleges that his Eighth Amendment right to adequate medical care was violated by Defendant Dr. Amir Mohamed when he was previously housed at the Richard J. Donovan Correctional Facility ("RJD"). *See id.*

Defendant moves for summary judgment of Plaintiff's claims. For the reasons stated below, the Court GRANTS Defendant's motion (ECF No. 22) and directs the Clerk of Court to enter judgment.

## I.   BACKGROUND

Plaintiff initially filed his Complaint against Dr. Mohamed on May 27, 2021. *See* Compl., ECF No. 1. On September 16, 2021, the Court *sua sponte* dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915A. *See* ECF No. 7 at 10. Plaintiff filed his First Amended Complaint ("FAC") on December 20, 2021 adding Defendants John/Jane Does, Marcus Pollard, Glynn, and S. Roberts. *See* ECF No. 10.

The Court, once again, conducted the required *sua sponte screening* pursuant to 28 U.S.C. § 1915A and found that Plaintiff failed to state a claim as to Defendants Pollard, Roberts, and John/Jane Does. *See* ECF No. 11, Dec. 20, 2021 Order at 11. However, the Court did find that Plaintiff had adequately alleged an Eighth Amendment claim as to Dr. Mohamed and gave Plaintiff the option to notify the Court of his intention to pursue his claims against Dr. Mohamed only or file an amended pleading correcting the deficiencies of pleading as to all the defendants. *See id.* Plaintiff chose the former and the Court dismissed Defendants Pollard, Roberts, and John/Jane Does from the action and directed the U.S. Marshal to effect service of the FAC on Dr. Mohamed. *See* ECF No. 13, Jan. 7, 2022 Order at 1-2.

---

[1] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically-numbered docket entry.

Defendant Mohamed filed a motion for summary judgment of the claim against him on the ground that Plaintiff failed to exhaust his administrative remedies pursuant to Federal Rule of Civil Procedure 56. *See generally* Def. Mohamed's Mot. Summ. J., ECF No. 22. The Court provided Plaintiff with notice of the requirements for opposing summary judgment as required by *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*) (*citing Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). Plaintiff filed his Opposition to the Motion on August 11, 2022. *See* ECF No. 25. On September 2, 2022, Dr. Mohamed filed his Reply. *See* ECF No. 26.

## II.    FACTUAL ALLEGATIONS[2]

Plaintiff alleges that on February 20, 2020, he submitted a Health Care Services Request 7362-form seeking medical attention regarding ongoing pain in his upper back and neck. *See* FAC at 11. He was seen by a triage nurse and prescribed Ibuprofen pain medication which "did not remedy [his] condition." *Id*. He submitted another 7362-form seeking medical attention on May 21, 2020, asking to see Defendant Dr. Mohamed, his assigned personal care physician, but was issued additional Ibuprofen and not given an appointment or seen by a doctor. *Id*.

Plaintiff submitted a third 7362-form stating he was experiencing loss of feeling in his right arm, hand, and fingertips, and was evaluated with the assistance of X-rays but was provided no other treatment. *Id*. His "pain persisted at the severe level," so he submitted another 7362-form stating he was suffering extreme pain and requesting an MRI. *Id*. After a second X-ray did not identify the "reason for Plaintiff's severe condition," and after suffering extreme pain for six months, he "finally" received an MRI on August 4, 2020. *Id*. However, "[e]ven after the M.R.I., there was no treatment provided specifically for the nerves in the form of neurology specific medical personnel." *Id*.

///

---

[2] These factual allegations are those alleged in Plaintiff's FAC.

Plaintiff states that he was seen by RJD Physical Therapist Colin Bowles on October 1, 2020, who noted atrophy and decreased muscle tone in the upper right arm and pectoral muscle compared to the left arm. *See id*. Bowles found that Plaintiff "has obvious nerve root compression injury from months back" causing atrophy and pronounced muscle weakness, recommended "further imaging of neck to determine cause of compression and consult with specialist to determine status of nerve compromise," ordered physical therapy to be discontinued until a determination was made with respect to the "cause of compression and plan for resolution," and sent a report to Dr. Mohamed. *Id*. at 11-12.

Plaintiff was seen by Dr. Mohamed several days later, on October 5, 2020, after eight months of presenting numerous requests for medical care while experiencing severe pain and numbing in the right shoulder, chest, arm, hand and fingers. *See id*. at 12. Plaintiff contends that Dr. Mohamed, after "a very cursory assessment," determined Plaintiff "did not need any further assessment," and neglected the severity of his condition and decided to refuse timely adequate medical care or spend funds on costly treatment as recommended by the physical therapist in order to qualify "for a 20% bonus of funds saved by his lack of treatment," thereby "pleasing the institution's 'Utilization Review System' called 'I.U.M.C.'" *Id*. at 12-13.

Plaintiff alleges that on November 6, 2020, his "strength in the right arm, shoulder and chest failed him as he leaned against the wall in his cell, like the muscles in those parts of his body just shut off. Plaintiff fell against the wall striking his forehead and occipital areas, causing loss of consciousness for a few minutes and swelling to the forehead and occipital areas," *Id.* at 14. Plaintiff was taken to the RJD medical clinic in an emergency vehicle. *See id*. He contends these new injuries are directly related to Dr. Mohamed's failure to treat his prior injury and should have alerted Dr. Mohamed to the need for further treatment and evaluation as recommended by the physical therapist. *See id*. at 13-15. Plaintiff claims that years-long attempts to reduce the budget of the California Department of Corrections and Rehabilitation ("CDCR"), including the 20% bonus to medical personnel for reducing costs, has resulted in a flawed and unconstitutional medical system

within the CDCR, and that Dr. Mohamed knew if he ordered the necessary tests in Plaintiff's case it would have exposed those flaws in the system. *See id*. at 15-19

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Mohamed has moved for summary judgment on the ground that Francisco failed to exhaust his administrative remedies as to his Eighth Amendment deliberate indifference to serious medical need claim pursuant to 42 U.S.C. § 1997e(a) prior to filing his 42 U.S.C. § 1983 complaint in this Court. *See* Def.'s P&As in Supp. of Summ. J. Mot. ["Def.'s P&As"], ECF No. 22-1 at 4-8. In support of the motion, Defendant submits evidence including a declaration from K. Martin [Martin Decl.], Acting Chief of the Health Care Correspondence and Appeals Branch (HCCAB) and exhibits attached to this declaration relating to Francisco's health care administrative appeals. *See* ECF No. 22-2.

### A. Legal Standards for Summary Judgment

Summary judgment is generally proper if the movant shows there is no genuine dispute as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When a defendants seeks summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative

remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

Finally, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). District courts must also "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### B. **Exhaustion**

Defendant Mohamed argues summary judgment must be granted because Francisco failed to exhaust his administrative remedies as to his Eighth Amendment claim before filing his Complaint.

*1.     Legal Standards for Exhausting Administrative Remedies*

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 576 U.S. 632, 634 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 576 U.S. at 648; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (stating that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 576 U.S. at 643 (quoting *Booth*, 532 U.S. at 738); *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171). In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief." 136 S. Ct. at 1859 (emphasis added). These circumstances arise when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable); *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The Ninth Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). Administrative remedies may also prove unavailable if the prisoner shows an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

Because the failure to exhaust is an affirmative defense, the defendant bears the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that a defendant must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). Otherwise, a defendant must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Albino*, 747 F.3d at 1169.

///
///
///

### 2. *CDCR's Exhaustion Requirements*

With respect to his initial burden on summary judgment, the Court finds Defendant Mohamed has offered sufficient evidence, which Francisco does not contradict, to prove that the California Department of Corrections and Rehabilitation (CDCR) has established an "administrative remedy" for prisoners, like Plaintiff, to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).

Specifically, Mohamed submits the declaration of K. Martin who is "currently employed by the California Correctional Health Care Services (CCHCS) in the Policy and Risk Management Services (PRMS) division as the acting Chief of the [HCCAB]," accompanied by exhibits. Martin. Decl. at ¶1. Martin attests that since August 1, 2008, "health care appeals/grievances involving medical, dental, and mental health care issues have been processed by the CCHCS, under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, *Plata v. Newsom*, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351." *Id.* at ¶ 3. The "HCCAB receives, reviews, and maintains all health care appeals/grievances accepted for the final (headquarters) level of review in the inmate health care appeal/grievance process, and renders decisions on such appeals/grievances." *Id.*

Effective September 1, 2017, new procedures were enacted under Title 15 of the California Code of Regulations which provide that "inmates may grieve complaints regarding health care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC form within 30 calendar days of: the action or decision being grieved; or initial knowledge of the action or decision being grieved." *Id.* at ¶ 7 (citing Cal. Regs. Code. tit. 15, §§ 3999.226, 3999.227(a), 3999.227(b)(1)-(2) (2019).) Health care grievances are "subject to two levels of review, an institutional level of review and a headquarters level of review." *Id.* (citing Cal. Regs. Code. tit. 15, § 3999.226(a)(1).) In order to properly exhaust, an inmate "shall document clearly and coherently all information known and available to the grievant regarding the issue," include "any involved staff member's last

name, first initial, title or position, and the date and description of their involvement." *Id.* (citing Cal. Regs. Code. tit. 15, § 3999.227(g).) If the inmate filing the grievance does not have "information to identify involved staff member(s)," they must provide "any other available information that may assist in processing the health care grievance." *Id.* (citing Cal. Regs. Code. tit. 15, § 3999.227(g)(2).) A grievance is deemed exhausted following a disposition by "headquarters." *Id.* (citing Cal. Regs. Code. tit. 15, § 3999.226.)

### 3. Francisco's Administrative Appeal History

In his FAC, Plaintiff alleges that on October 5, 2020, Dr. Mohamed was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. *See* FAC at 12. Defendant contends that summary judgment must be granted because there is no genuine dispute that Plaintiff failed to properly exhaust because the only grievance he submitted related to his health care "did not mention Dr. Mohamed or how Dr. Mohamed was deliberately indifferent to Plaintiff's medical needs, and Plaintiff submitted it a month before he ever met with Dr. Mohamed." Def.'s P&As, ECF No. 22-1 at 6.

Martin states in his declaration that, as the Acting Chief of the HCCAB, his "duties include the oversight of CDCR staff who process health care appeals/grievances submitted by adult inmates regarding medical, dental, and mental health care services." Martin Decl., ECF No. 22-2 at ¶¶ 1,2. At the Attorney General's request, Martin conducted a "review of the inmate health care appeal/grievance records in the HCARTS database for inmate Keelon D. Francisco, CDCR No. G25322." *Id.* at ¶ 8. HCARTS is an acronym for a computer database known as "Health Care Appeals and Risk Tracking System." *Id.* at ¶ 4. This database "tracks health care appeals/grievances that were received and ultimately rejected and the reason for the rejection." *Id.* Computer entries into HCARTS "are made at or near the time of the occurrence by the employee who is processing the appeal/grievance." *Id.*

Along with his declaration, Martin has attached exhibits which include a copy of the Plaintiff's HCARTS grievance history, as well as a copy of a health care grievance submitted by Plaintiff in 2020. *See id.*, Ex. A and B.

10

3:21-cv-01013-GPC-AGS

It is undisputed that on September 2, 2020, Plaintiff initiated a health care grievance by submitting a CDCR 602 HC form. *See* Martin Decl., Ex. B at 13. In this grievance, Plaintiff alleges that he was "recommend[ed] on [June 1, 2020] for physical therapy for pain in my right shoulder with a date to be seen by [September 1, 2020]" but he has "yet to be seen." *Id.* According to the HCARTS tracking history, Plaintiff's grievance was assigned the Log No. RJD-HC-20001493 and was "received" at the "institutional level" on September 3, 2020. *Id.*, Ex. A at 6. On October 16, 2020, Plaintiff's grievance was given an "institutional level response" which determined that "no intervention" was necessary because Plaintiff was seen by a physical therapist on October 1, 2020. *Id.*, Ex. B. at 18-19. Plaintiff filed an appeal on December 6, 2020 but offered no additional facts and instead claimed to "live with unwanted pain and needless suffering" and requested an "outside specialist that specialize in these types of conditions." *Id.* at 12. Plaintiff's appeal was denied at the "Headquarter's Level Response" on March 15, 2021. *Id.* at 8.

### 4. Analysis

Defendants argue that summary judgment should be granted because there is no genuine dispute that Plaintiff failed to file a grievance that identified Dr. Mohamed by name or description and the only grievance filed by Plaintiff was filed a month before he was ever examined by Dr. Mohamed. *See* Def.'s P&As at 6-8.

The PLRA "requires that a prisoner challenging prison conditions exhaust available administrative remedies *before* filing suit." *Albino*, 747 F.3d at 1165 (emphasis added) (citing 42 U.S.C. § 1997e(a)); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

Plaintiff does not dispute that he did not file a grievance identifying Dr. Mohamed by name or by description. Nor does Plaintiff dispute that he did not file a grievance relating to the examination he received by Dr. Mohamed. Instead, he argues that such a grievance would only be considered "second and successive" to the original grievance he filed in

September of 2020 and the CDCR purportedly has a "tendency to dismiss second and successive grievances." Pl.'s Opp'n , ECF No. 25 at 1, 4.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 548 U.S. at 90. As Martin attests, CDCR regulations require that a "grievant shall document clearly and coherently all information known and available to the grievant regarding the issue." Martin Decl. at ¶ 7 (citing Cal. Regs. Code. tit. 15, § 3999.227(g)). He further attests that the CDCR regulations state that a "grievant shall include any involved staff member's last name, first initial, title or position, and the date and description of their involvement." *Id.* (citing Cal. Regs. Code. tit. 15, § 3999.227(g)(1)). The record before the Court indicates that it is undisputed that Plaintiff did not file a grievance that complied with any of these regulations as it specifically pertains to the claims against Dr. Mohamed.

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *See Jones*, 549 U.S. at 218. "The 'primary purpose of a grievance is to alert the prison to the problem and facilitate its resolution.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (*quoting Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th 2009)). Plaintiff's sole grievance, filed a month before his examination with Dr. Mohamed and failing to identify any staff by name, is clearly insufficient to "alert the prison to the problem." *Id.* Plaintiff's only defense is that he believed the outcome would be no different if he filed a grievance relating to his Eighth Amendment claims against Dr. Mohamed. Other than making assumptions about the outcome of a response to a grievance, Plaintiff offers no evidence to rebut Defendant's showing that the grievance system was available to him and he, in fact, did use this system. He simply has no evidence that he even attempted to file a grievance relating to his claims against Dr. Mohamed. Moreover, he offers no evidence to even suggest that he was thwarted in any way by any prison officials from filing a grievance relating to the events giving rise to this action.

Based on the record here, the Court finds that the Defendant has shown that administrative remedies were available to Plaintiff prior to filing his federal lawsuit. As described above, CDCR has a detailed process for seeking administrative review of health care grievances. *See* Cal. Code. Regs. tit. 15, § 3999.225 et. seq; *see also* Martin Decl., ECF No. 22-2 at ¶ 7 Plaintiff has not submitted any evidence to show that he attempted to file a grievance relating to his Eighth Amendment claims against Dr. Mohamed. Plaintiff has not submitted any evidence to dispute any of Defendant's claims or dispute Defendant's showing that a grievance procedure was available to him.

This Court finds the evidence in the record shows a lack of genuine dispute regarding Plaintiff's failure to complete exhaustion of his claims prior to filing his federal lawsuit. *See Albino*, 747 F.3d at 1172. Accordingly, the Court concludes Defendants are entitled to summary judgment under Rule 56 because the "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust" administrative remedies as to his Eighth Amendment claims and Plaintiff has failed to satisfy his burden to show administrative remedies were "unavailable" to him. *See* Fed. R. Civ. P. 56; *see also Albino*, 747 F.3d at 1166.

## IV.  CONCLUSION AND ORDER

Accordingly, the Court:

**GRANTS** Defendant's Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrate remedies prior to filing suit, pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED**.

Dated:  September 27, 2022

Hon. Gonzalo P. Curiel
United States District Judge